(No. 38570.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ALONZO TAYLOR, Plaintiff in Error.

*Opinion filed November 19, 1965.*

RICHARD LOUNDY, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and KENNETH L. GILLIS, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Defendant was, after a bench trial in the circuit court of Cook County, convicted of the offense of rape and sentenced to imprisonment in the penitentiary for a term

of 45 years. This writ of error questions the propriety of the trial court's admission of allegedly coerced confessions, which, it is argued, deprived defendant of due process of law.

The 80-year-old complaining witness testified that on December 24, 1959, at about 2:00 A.M., she heard a noise at her apartment entrance. She thereupon engaged the "burglar chain" and partially opened the door. A man identified by the complaining witness as the defendant, whom she had previously seen around the apartment building, appeared and persuaded her to open the door fully to receive a "Christmas present". The man, upon gaining entrance to her apartment, ushered her to the bed, threatened to shoot her with a gun-like object, and after a scuffle, during which the complaining witness was slapped several times, forcibly had sexual intercourse with her. She called the police two hours after the occurrence, explaining that the delay was due to her fear that the assailant was waiting in the hallway where the telephone was located. Defendant was identified by the complaining witness in a line-up two days after the offense. She stated that he was known to her by the name of "Robert" or "Robin".

A neighbor of the complaining witness testified that she also heard a noise at her own door at about 2:00 A.M. on the same date. She heard someone say, "This is Robert. I have a message for your husband," whereupon she opened the door partially, leaving the burglar latch engaged, and told "Robert" that the family had retired for the evening. She identified the defendant as "Robert", stating that she had previously seen him about the building and that he had visited her and her husband several times.

Chicago police officer Kobar arrested defendant at 9:30 A.M. on December 26, 1959, and testified that upon being asked, defendant stated that he was sometimes called "Robert". Defendant was searched and a small toy pistol

was found, subsequently identified by the complaining witness as the gun-like object she had observed in her assailant's hand. After the arrest, defendant was transported to a police station where the line-up was arranged. Kobar testified a conversation was had with defendant several hours later in the presence of Kobar and officer Walter McCarthy during which defendant orally confessed committing the rape.

On December 28, 1959, defendant was questioned by assistant State's Attorney Donigan at the Sex Bureau, where he signed a statement in the presence of Donigan, detective John Geimer, and Lena Woodson. Donigan testified that officer Klauses was also present and, on cross-examination of Donigan, it appears that, reading from the above signed statement, he spelled the name of officer Klauses and pointed it out. However, the statement as it appears in the record makes no mention of Klauses, and no other witness agrees with Donigan that Klauses was present.

Defendant testified he had been at 6034 Harper Avenue with friends at the time of the crime; that he had subsequently confessed because of beatings and threats upon his life by officers Kobar, Geimer and an unknown policeman; that he was innocent and that he had never used the name of "Robert". Two alibi witnesses substantially corroborated defendant's statement as to his whereabouts at the time of the alleged offense.

In rebuttal, officer Kobar denied striking defendant; officer Geimer denied seeing defendant until December 28, when the latter was taken to the Sex Bureau. This latter testimony, however, was contradicted by a surrebuttal witness who maintained that Geimer was present at defendant's arrest.

The oral confession was admitted into evidence at the trial without objection, but the subsequent written statement came in over objection on grounds of involuntariness.

Although it is well settled in this State that a confession may be challenged either by preliminary hearing on a motion to suppress (*People* v. *Spencer*, 27 Ill.2d 320) or by appropriate objection thereto at the trial (*People* v. *Wagoner*, 8 Ill.2d 188), and failure to pursue one of these devices ordinarily precludes consideration of the matter on appeal (*People* v. *Williams*, 26 Ill.2d 190, 192; *People* v. *Jones*, 31 Ill.2d 42, 50), we believe the questions as to the voluntariness of both confessions are so inextricably interwoven that timely objection to the written statement adequately preserved all alleged error in admission of both confessions for review. Implicit in defendant's brief is the contention that coercion with regard to the oral confession remained a continuing influence and precipitated the subsequent written statement. With the exception of one threat, ("[an officer] told me that if I didn't go on and confess to the prosecuting attorney downstairs that I would get killed when I go back, they would give me a worse whipping than they had already, had did") all of the claimed duress occurred prior to the oral confession. If the original oral confession was unlawfully obtained, subsequent statements made while under the same constraint, although apparently voluntary, are nevertheless inadmissible. (*People* v. *Sloss*, 412 Ill. 61; *People* v. *LaCoco*, 406 Ill. 303, 311, *cert.* denied 340 U.S. 918, 95 L. ed. 663, 71 S. Ct. 348; *People* v. *Tomlison*, 400 Ill. 555.) Our disposition accordingly must consider both the written statement and the prior oral confession.

Defendant contends that where, as here, timely objection is made to the admission of a confession, it becomes incumbent upon the court to conduct a separate hearing upon the question of its admissibility even without a specific request therefor, citing *People* v. *Jackson*, 31 Ill.2d 408. The State concedes this procedure is ordinarily required but argues that since "* * * the trial judge, sitting without a jury, did hear all the evidence he should have heard on a

'voluntariness' hearing * * *", the reasons underlying the normal procedural rule have been substantially subserved. Because of our prior determination that questions concerning the admissibility of all the confessions have been adequately preserved for review, the State's argument cannot prevail. Officer Kobar specifically testified, as related above, that officer Walter McCarthy was present during the interrogation which produced the oral confession. Also, assistant State's Attorney Donigan testified that there were two officers, Geimer and Klauses, present at the time the written statement was obtained. The State contends, perhaps correctly, that Donigan was mistaken as to Klauses' presence, but we believe it was incumbent upon the State to produce these identified, material witnesses in order to discharge its burden of proving voluntariness (*People v. Wright,* 24 Ill.2d 88, 92, and cases therein cited), or adeqately explain their absence. Although we thus conclude that the failure of the court below to conduct a hearing on the admissibility of the confessions was error, and that remandment for that purpose is required, it does not follow that this default, of itself, demands reversal of the conviction. *People v. Jackson,* 31 Ill.2d 408, 410, and cases there cited.

Defendant next maintains that unnecessary delay in taking him before a magistrate "* * * materially injured his case in the trial court and consequently deprived him of a fair trial." Defendant was arrested at 9:30 A.M. on Saturday and was not taken before a magistrate until after the written statement was given on Monday. The oral confession, however, was obtained approximately 2 hours after his arrest, and although the statute in force at the time of defendant's arrest (Ill. Rev. Stat. 1959, chap. 38, par. 660) required that he be taken before a magistrate "without unnecessary delay", noncompliance therewith does not necessarily obviate a conviction nor render an otherwise voluntary confession inadmissible at the trial. (See *People v.*

*Hall,* 413 Ill. 615.) The *McNabb-Mallory* rule (*McNabb* v. *United States,* 318 U.S. 332, 87 L. ed. 819, 63 S. Ct. 608; *Mallory* v. *United States,* 354 U.S. 449, 1 L. ed. 2d 1479, 77 S. Ct. 1356) holding confessions *per se* inadmissible if obtained during illegal detention, has never been the law of Illinois. (See *People* v. *Kees,* 32 Ill.2d 299; *People* v. *Stacey,* 25 Ill.2d 258; *People* v. *Jackson,* 23 Ill.2d 274.) Any delay, however, should be considered on the question of voluntariness of the confessions. *People* v. *Hall,* at p. 624.

Defendant further maintains that the existence of a material variance between the indictment, supplemented by the bill of particulars, and the proof demands reversal of the conviction. This argument is predicated upon testimony of the complaining witness alleging the occurrence of the offense on December 25, 1959, instead of December 24, as specified in the bill of particulars. While it is correct that there is some discrepancy in her testimony, the complaining witness, pursuant to specific inquiry, stated positively that the crime occurred on December 24, at about 2:00 A.M. Minor inconsistencies in the testimony of the complaining witness, particularly when subsequently corrected pursuant to specific inquiry, do not, in our judgment, amount to a fatal material variance. It is apparent from a perusal of the testimony in question that the complaining witness had confused Christmas Eve morning with Christmas morning, thus giving rise to the claimed discrepancy.

It is further argued that the conviction must be reversed because defendant has not been proved guilty beyond a reasonable doubt. Again much is said concerning minor variations in the testimony of the complaining witness. However, the essence of her testimony reveals that she had a prior acquaintance with defendant, had the opportunity to observe him in a lighted hallway, and subsequently positively identified him in a police line-up. Corroborating the complainant's assertions was the testimony of the neighbor

and the testimony of officer Kobar as to finding a toy pistol on defendant's person. We believe the evidence in this case, if believed, establishes guilt beyond a reasonable doubt. See *People* v. *Adkins,* 29 Ill.2d 332.

Defendant finally questions the severity of the 45-year sentence imposed. He argues that the trial judge considered the parole laws in determining the length of imprisonment and, therefore, the sentence must be set aside. However, no maximum limitation is placed upon a rape sentence (Ill. Rev. Stat. 1961, chap. 38, par. 490; Ill. Rev. Stat. 1963, chap. 38, par. 11—1), the State recommended the sentence ultimately imposed, the record indicates a prior felony conviction, and the trial court found defendant "beyond rehabilitation". We have previously stated that "[w]here it is contended that the punishment imposed in a particular case is excessive, though within the limits prescribed by the legislature, this court should not disturb the sentence unless it clearly appears that the penalty constitutes a great departure from the fundamental law and its spirit and purpose, or that the penalty is manifestly in excess of the proscription of section 11 of article II of the Illinois constitution which requires that all penalties shall be proportioned to the nature of the offense. [Citations]." (*People* v. *Smith,* 14 Ill.2d 95, 97.) Such principles have not been violated here. We believe that under the now applicable statute granting reviewing courts the power to reduce sentences imposed by trial courts where circumstances warrant (Ill. Rev. Stat. 1963, chap. 38, par. 121—9(b)(4), such authority should be applied with considerable caution and circumspection, for the trial judge ordinarily has a superior opportunity in the course of the trial and the hearing in aggravation and mitigation to make a sound determination concerning the punishment to be imposed than do the appellate tribunals.

For the reasons heretofore assigned this cause is remanded to the circuit court of Cook County with directions to conduct a hearing on the admissibility of the confessions.

If the latter are found to be inadmissible, the judgment must be vacated and a new trial awarded defendant. If found to be admissible, a new judgment of conviction should be entered.

*Cause remanded, with directions.*